519 A.2d 1337

**COMPTROLLER OF the TREASURY**

v.

**FAMILY ENTERTAINMENT CENTERS OF ESSEX, INC., et al.**

**No. 674, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Jan. 19, 1987.

78

Gaylin Soponis, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen. and Linda Koerber Boyd, Asst. Atty. Gen., on the brief), Baltimore, for appellant.

Alan S. Dubin (Arent, Fox, Kintner, Plotkin & Kahn, on the brief), Washington, D.C., for appellees, Family Entertainment Centers of Essex, Inc., et al.

Rob Ross Hendrickson (J. Cookman Boyd, Jr. and Boyd, Benson & Hendrickson on the brief), Baltimore, for appellee, L.D.C.A. of Maryland, Inc., T/A "Gadgets."

Argued before WEANT, BISHOP and GARRITY, JJ.

WEANT, Judge.

The Comptroller of the Treasury, appellant, decided to levy assessments for unpaid admissions and amusement tax against the corporate appellees that own three restaurants, known to the public as "Chuck E. Cheese" restaurants. The appellant also decided to deny claims for refunds for certain admissions and amusement taxes to L.D.C.A. Inc. of Maryland, another corporate appellee who owns a restaurant known as "Gadgets." Appellant based its decisions on its interpretation of § 402(a)[1] of Article 81 of the Md.Ann. Code. Appellant interprets the word "performance" in that section to include the preprogrammed, mechanical puppet shows that are automaticaly run every few minutes in appellees' restaurants. If appellant is correct, appellees would owe admission and amusement taxes.

When the appellees appealed to the Maryland Tax Court, that agency disagreed with the Comptroller's conclusions.

The Comptroller consolidated appellees' separate cases and appealed the Tax Court's decision to the Circuit Court for Baltimore County. When the circuit court affirmed the Tax Court, the Comptroller appealed to this Court.

Appellant presents these questions on appeal:

---

1. While the Acts of 1983 made certain paragraph and style changes in § 402, that does not affect the statute for the purposes of this opinion.

1. Was admissions and amusement tax properly assessed (and refund properly denied), pursuant to § 402(a), on the gross receipts from amounts charged for refreshments where performances by mechanical characters are provided?

2. Was Family Entertainment Centers properly assessed admissions and amusement tax on its gross receipts from its video games and rides?

We affirm.

### 1. Can Pre-programmed Mechanical Puppets "Perform"?

■ This case requires a decision on whether the life-sized, mechanical puppets displayed in restaurants like appellees' are actually "performing" so that any receipts from the sale of refreshments or from admission fees are properly taxable under § 402(a). (All references will be to Article 81 unless otherwise noted.)

Section 402(a) gives counties authority to tax entities on gross receipts that the entities collect from admission fees or food and beverage sales under certain circumstances. The circumstance that applies to this case is found in § 402(a)(4), which says that a county may levy tax on fees derived from amounts charged for

refreshment, service or merchandise at any roof garden, cabaret or similar place where there is furnished a performance.

\* \* \* \* \* \*

The term "roof garden or other similar place" shall include any room in any hotel, restaurant, hall or other place where music or dancing privileges or other entertainment, except mechanical music, radio or television, alone, and where no dancing is permitted, are afforded the members, guests, or patrons in connection with the serving of selling of food, refreshment or merchandise.

Applying § 402(a), the Tax Court decided that the life-sized electronic puppets do not "perform" and that those machines are not unlike complex jukeboxes.

The circuit court affirmed pursuant to § 229(*o*) as well as the standards of review set out in *Ramsay, Scarlett and Co. v. Comptroller*, 302 Md. 825, 490 A.2d 1296 (1985). The task is to decide whether the decision of the circuit court was clearly erroneous. Md. Rule 1086.

This Court addressed the word "performance" as used in § 402(a) in *Comptroller v. Citizens for Hoyer*, 51 Md.App. 33, 440 A.2d 429 (1982). In that case this Court said that the Legislature has not defined the term. This Court further determined that a band of seven musicians (who played background music at a political-fundraising cocktail party, at which there was no dancing, and at which the presence of the band was unadvertized) was not "performing" pursuant to § 402(a).

In the *Hoyer* decision this Court relied on *Comptroller v. Mandel, Lee, Goldstein, Burch Re-election Committee*, 280 Md. 575, 374 A.2d 1130 (1977), in which the Court of Appeals held that an organist playing tunes in the background at a fundraising cocktail party was not a performance under § 402(a). The Court of Appeals said that "performance" was to be defined by using the "ordinary and accepted" meaning of the word. *Id.* at 581, 374 A.2d 1130. The Court said that the Legislature meant the term to be defined "as the public thinks of it." *Id.* at 584, 374 A.2d 1130. The Court turned to Webster's dictionaries for guidance.

According to Webster's New Universal Unabridged Dictionary (2d edition, 1983), one definition of the word "performance," among others clearly less applicable, is "(4) a formal exhibition of skill or talent as a play, musical program, etc.; a show." We recognize that "performance," as used in § 402(a), has connotations of inherent human input that leaves room for spontaneous imperfections during the exhibition of skill or talent. A "performance" is a method

to measure human skill or talent. In other words, a pre-programmed robot can perform a menial task but, because a pre-programmed robot has no "skill" and therefore leaves no room for spontaneous human flaw in an exhibition, it cannot "perform" a piece of music anymore than can a jukebox. Just as a wind-up toy does not perform for purposes of § 402(a), neither does a pre-programmed mechanical robot.

Appellees' mechanical puppets are designed to give the impression that they are performing; however, because there is no human skill necessary in their control, there is no "performance." We perceive no clear error on the part of the circuit court in its decision to agree with the Tax Court that the displays at the restaurants are not unlike embellished jukeboxes.

■ Appellant further argues that the Tax Court's decision was not based on sufficient evidence. In reviewing the record, we disagree. Those facts, which were believed by the Tax Court, are sufficient to determine whether a mechanical puppet display was a "performance."

### 2. Are Tokens Like Tickets Under § 402(A)?

■ Appellant also contends that Family Entertainment Centers were underassessed for the amusement taxes on their gross receipts from video games because Family Entertainment Centers improperly calculated their gross receipts using the "tax included" method. See COMAR 03.-01.01.01 B.

Appellant argues that "admissions" in the Comptroller's regulation refers only to actual admission tickets and does not include tokens for video games. Without a definition of "admissions" in the regulations to guide the Tax Court, we find no fault with the Tax Court's construction of the term to include game tokens. A "tax included" method of calculation can be employed properly.

Appellant further argues that even if the Tax Court's interpretation was proper, Family Entertainment Centers

did not comply with the notice provisions of the regulation because the Comptroller's witness stated that he never saw one of the required notices. The Tax Court pointed out that there was conflicting testimony concerning signs posted on the video machines. That body further indicated that it believed the required notices were posted.

We agree with the circuit court that the orders of the Tax Court "reflect no error as a matter of law and that the decision and Orders are supported by substantial evidence appearing in the record."

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.